UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Marianne Marino

     v.                      Civil No. 17-cv-179-JL
                                     Opinion No. 2018 DNH 191
U.S. Social Security
Administration, Commissioner

**ORDER ON APPEAL**

Marianne Marino has appealed the Social Security Administration's ("SSA") denial of her application for a period of disability and disability insurance benefits. An administrative law judge ("ALJ") at the SSA ruled that, despite severe impairments, Marino retains the residual functional capacity ("RFC") to perform past relevant work, and thus is not disabled. See 20 C.F.R. § 404.1505(a). The Appeals Council later denied Marino's request for review, see id. § 404.967, with the result that the ALJ's decision became the final decision on her application, see id. § 404.981. Marino then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Marino has moved to reverse the decision. See LR 9.1(b). The Acting Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision. See LR 9.1(e). After careful consideration, the court denies Marino's motion and grants the Acting Commissioner's motion.

## I.  __Applicable legal standard__

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). Though the evidence in the record may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The court therefore "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

## II. __Background__[1]

The ALJ held a hearing on Marino's application.  After the hearing, and more than a month after the deadline for the submission of evidence, Marino submitted a medical opinion form completed by her primary care physician, Dr. Rachael Hamilton. The ALJ found that Marino had not met the requirements of 20 C.F.R. § 405.331(c) and did not admit this evidence into the record.

Next, the ALJ invoked the requisite five-step sequential evaluation process in assessing Marino's request for disability and disability insurance benefits.  See 20 C.F.R. § 404.1520. After determining that Marino had not engaged in substantial gainful activity after the alleged onset of her disability on December 1, 2013, the ALJ analyzed the severity of her impairments.  At this second step, the ALJ concluded that Marino had two severe impairments: osteoarthritis of the knees and degenerative disc disease of the lumbar spine, mild.[2]

At the third step, the ALJ found that Marino's severe impairments did not meet or "medically equal" the severity of

---

[1] The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitation in their Joint Statement of Material Facts (doc. no. 15) is incorporated by reference.

[2] Admin. R. at 22.

one of the impairments listed in the Social Security regulations.[3] See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. After reviewing the medical evidence of record, admitted medical opinions, and Marino's own statements, the ALJ concluded that Marino retained the RFC to perform sedentary work, see 20 C.F.R. § 404.1567, except that she:

> can lift ten pounds occasionally and frequently; can frequently stand and walk for two hours and sit for six hours total in an eight-hour workday; has unlimited use of hands and feet to operate controls or push and pull; [can] occasionally balance, stoop, kneel, crouch and crawl and should avoid all exposure to unprotected heights.[4]

In doing so, the ALJ adopted the opinions of non-examining medical expert Dr. Hugh Fairley.[5]

Finding that, even limited in this manner, Marino was able to perform her past relevant work as a branch manager and medical case manager, see 20 C.F.R. § 404.1566, the ALJ concluded his analysis and found that Marino was not disabled within the meaning of the Social Security Act.

## III. **Analysis**

Marino challenges the ALJ's decision on three grounds, arguing that the ALJ erred by: (1) not admitting her post-

---

[3] Id. at 26.

[4] Admin. R. at 27.

[5] Id. at 31.

hearing submission of evidence into the record; (2) relying on the opinion of Dr. Hugh Fairley despite material changes in the medical evidence of record post-dating that opinion; and (3) failing to consider all of Marino's impairments in the RFC.  The court addresses each argument in turn.

### A.    Admission of late-submitted evidence

Marino submitted additional written evidence to the ALJ on September 1, 2016, more than a month after the July 27, 2016, hearing.[6]  The evidence consisted of a "Physical Impairment Medical Source Statement" form completed by Dr. Hamilton and dated July 26, 2016.[7]  In the accompanying cover letter, Marino's counsel explained that he had initially asked Dr Hamilton to complete the form in March 2016.[8]  She responded later the same month, providing a letter instead of completing the form.  The letter, which was admitted into the record, included a statement that "we are in the process of getting [Marino] evaluated by physical therapy to see if she requires any physical modifications to working."[9]

---

[6] Admin. R. at 77.

[7] Id. at 79-83.

[8] Id. at 78.

[9] Id. at 917.

On July 12, 2016, Marino's counsel asked Dr. Hamilton to reconsider completing the form without a functional capacity evaluation because Marino had informed him that "the only facility in her area that does these and takes her insurance is unable to provide this service to her until the fall."[10]  Dr. Hamilton returned a completed form, dated July 26, 2016, to Marino's counsel on August 31, 2016, and counsel submitted it to the ALJ the following day.[11]

The ALJ declined to admit the late-filed report of Dr. Hamilton pursuant to 20 C.F.R. § 405.331.  This regulation requires that written evidence be submitted "no later than 5 business days before the date of the scheduled hearing."  If evidence is submitted after the hearing but before a decision is issued, the ALJ "may decline to consider the evidence" unless the claimant shows that:

> there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of your claim, and:
>
> (1)  Our action misled you;
>
> (2)  You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or
>
> (3)  Some other unusual, unexpected, or unavoidable circumstance beyond your control

---

[10] Id. at 78.

[11] Id. at 77, 79-83.

> prevented you from submitting the evidence
> earlier.

20 C.F.R. § 405.331(c).[12]

The ALJ found that these requirements of paragraph (c) were not satisfied, as "there was ample time to have obtained the completed form and filed it timely for hearing," and Marino had not shown that the report had a reasonable possibility of affecting the outcome.[13] He then exercised his discretion to decline to consider the report.[14]

Marino argues that the ALJ erred both by: (1) failing to find that an unusual, unexpected, or unavoidable circumstance beyond Marino's control prevented earlier submission; and (2) finding no showing of a reasonable possibility of affecting the outcome. One the first point, the court disagrees. Marino has not shown that unusual, unexpected, or unavoidable circumstances beyond her control prevented earlier submission of this evidence. The ALJ was thus not obligated to admit the evidence and the court need not consider whether the report may have affected the outcome of Marino's claim.

---

[12] The SSA revised the regulations concerning the submission of evidence to ALJs effective January 17, 2017. Because Marino submitted her additional evidence and the ALJ issued his decision before that date, the previous regulation applies to Marino's submission.

[13] Admin. R. at 19-20.

[14] Id.

Marino urges that the exceptions to the deadline for evidence submission should be read expansively.  As Judge McAuliffe has noted:

> [T]he district courts in this circuit seem to disagree as to the precise nature of the burden imposed upon claimants by section 405.331.  As noted above, those in Maine have described the claimant's burden as "rather rigorous," while those in Rhode Island have held it is less demanding and analogized it to "excusable neglect."  Compare Raymond v. Astrue, No. 1:12-CV-92-DBH, 2012 WL 6913437, at *2 (D. Me. Dec. 31, 2012) with Howe v. Colvin, 147 F. Supp. 3d 5, 8 (D.R.I. 2015).

Simard v. Colvin, 2016 DNH 186, 14-15.  See Jones v. Berryhill, No. 16-cv-11011-DJC, 2017 WL 3726018, at *11 (D. Mass. Aug. 29, 2017) (Casper, J.) (applying "rather rigorous standard" and citing Raymond).  Here, as in Simard, "[t]his court need not weigh in on that issue since, even giving claimant the benefit of the lighter burden, it is plain [s]he failed to meet it." 2016 DNH at 15.

Marino has not shown she submitted Dr. Hamilton's report late because of circumstances beyond her control, rather than her own lack of diligence.  She argues that her counsel's initial request in March demonstrates diligence and that Dr. Hamilton's response requesting a functional capacity evaluation was unexpected.  While Marino and her counsel may have been surprised by Dr. Hamilton's reluctance to complete the provided form, there is no evidence in the record that her counsel

renewed the request until July 12, approximately a week before the deadline for the submission of written evidence.[15] Marino attributes this delay, at least in part, to attempting to schedule a functional capacity evaluation and the unexpected unavailability of such, but makes no showing regarding these efforts. Marino was informed of Dr. Hamilton's desire to schedule an evaluation by at least March 14, 2016, when Dr. Hamilton responded to counsel. And Marino was informed of the July 20, 2016, deadline to submit evidence by the SSA's scheduling letter on April 26, 2016. This insufficiently explained delay between knowledge of the evidentiary deadline and the renewed request to Dr. Hamilton, especially given knowledge of Dr. Hamilton's previous response, is dispositive. Marino did not meet the deadline to submit evidence primarily because of this delay, which was within her control.

A doctor's failure to promptly respond to a request issued just one week before the evidentiary deadline not is an unusual, unexpected, or unavoidable circumstance beyond the claimant's control when the doctor has previously indicated reluctance to complete the requested form absent further information. While

---

[15] Marino suggests that her counsel made "numerous requests" to Dr. Hamilton to complete the form, but the July 12 letter to Dr. Hamilton mentions no interim requests, and the submission letter to the ALJ only describes requests after the July 12 letter. Admin. R. at 77-78.

Dr. Hamilton's failure to return the form to Marino's counsel for more than a month after she apparently completed it might represent an unusual circumstance, it was not this delay that caused Marino to miss the deadline for the submission of evidence. There is also no record that Marino made any attempt to inform the ALJ, at the hearing or in separate communication, that she was still seeking to gather additional written evidence. This was not the kind of discrete and promptly rectified error at issue in Howe v. Colvin, where claimant's counsel inadvertently failed to submit a medical record because it was accidentally attached to another file and then submitted the document one day after the evidentiary deadline. 147 F.3d at 6-7. Marino has not shown that the April to July delay was equivalent to "an attorney's clerical error" and thus excusable even under Howe's more permissive view of the standard. See id. at 8. Accordingly, the ALJ did not err in finding that Marino's submission did not meet the requirements of 20 C.F.R. § 405.331(c).

**B.  Dr. Fairley's opinion**

Marino next alleges that the ALJ erred by adopting the January 2015 opinion of Dr. Hugh Fairley, a non-examining state agency medical expert, despite subsequent material changes to the medical evidence of record.

"It can indeed be reversible error for an administrative law judge to rely on an RFC opinion of a non-examining consultant when the consultant has not examined the full medical record." Meldrem v. Colvin, 2017 DNH 096, 5 (internal quotations and citations omitted). But "the fact that an opinion was rendered without the benefit of the entire medical record does not, in and of itself, preclude an ALJ from giving significant weight to that opinion." Coppola v. Colvin, 2014 DNH 33, 23-24. "An ALJ may yet rely on such an opinion 'where the medical evidence postdating the reviewer's assessment does not establish any greater limitations, or where the medical reports of claimant's treating providers are arguably consistent with, or at least not 'clearly inconsistent' with, the reviewer's assessment.'" Meldrem, 2017 DNH 096, 6 (quoting Ferland v. Astrue, 2011 DNH 169 at 11 (McAuliffe, J.)).

The ALJ bears the burden of showing, subject to the substantial evidence standard, that either of these conditions are present, and must make that determination "adequately clear." Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, 2017 DNH 237, 11 (Barbadoro, J.). In doing so, an ALJ may not rely on "raw medical data . . . until its functional significance is assessed by a medical expert." Id. at 12; Manso-Pizzaro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) ("[A]n ALJ, as a lay person, is not qualified to

interpret raw data in a medical record.")  But he may make
"common-sense judgments about functional capacity based on
medical findings," within "the bounds of a lay-person's
competence." Gordils v. Sec'y of Health & Human Servs., 921
F.2d 327, 329 (1st Cir. 1990).  Such judgements are possible
"where the evidence shows a 'relatively mild physical impairment
posing, to the layperson's eye, no significant restrictions.'"
Giandomenico, 2017 DNH 237, 12 (quoting Roberts v. Barnhart, 67
Fed. Appx. 621, 623 (1st Cir. 2003)).

     The ALJ adopted Dr. Fairley's opinion as to Marino's RFC.
He acknowledged that "additional treatment notes were admitted
to the record after" Dr. Fairley's opinion was rendered, but
found that "these additional treatment notes do not document any
meaningful change or deterioration in the claimant's
presentation," and the opinion "remained consistent with the
evidence of record in its entirety."[16]  The ALJ also specifically
addressed Marino's procedures and diagnoses, and noted the
absence of provider opinion of less than sedentary work
capacity.[17]  Having done so, the ALJ determined that the record
did not reflect meaningful deterioration in Marino's condition
after Dr. Fairley rendered his opinion. The decisive question is

_____

[16] Admin. R. at 31.

[17] Id. at 28-31.

whether substantial evidence supports this determination, without reliance on improper interpretation of raw medical data.

Marino identifies numerous subsequent examinations, procedures, and diagnoses that allegedly render Dr. Fairley's opinion obsolete. First, she points to her total right knee replacement surgery. The ALJ acknowledged this surgery and reviewed treatment notes from Marino's recovery process. These include that by six months after the surgery, Marino reported that she was "doing exceptionally well" and was considering repeating the procedure on her other knee.[18] The ALJ concluded that "[w]hile the claimant can be expected to be unable to perform sedentary work during recovery from [total knee replacement], such period of recovery has not lasted the requisite 12 month duration."[19] The ALJ also found that Marino's complaints of possibly related pain in her left knee "did not diminish observations of normal gait through June 2016."[20]

Based on complaints of worsening cognitive functions, Marino underwent an MRI of her brain in July of 2015.[21] Marino

---

[18] Id. at 29, 857.

[19] Id. at 31.

[20] Id. at 30.

[21] The ALJ wrongly stated that Marino had a further brain MRI in October 2015. Id. at 29. The cited October treatment notes only reflect Dr. Hamilton noting the July MRI in her records from an

next argues that this procedure identified "moderate global atrophy and multifocal old post ischemic encephalomalacia."[22] But the ALJ considered this result and noted that it also found "no acute intracranial findings to account for the patient's presenting symptoms."[23]

After complaining of thumb pain, Marino underwent x-rays of both thumbs in September 2015 and was diagnosed with "bilateral first CMC osteoarthritis, mild."[24] The accompanying notes indicate that activity modification and splints were discussed as treatment options, but do not describe the extent or duration of any limitations.[25] The ALJ's explicit discussion of Marino's thumb pain is limited to a statement that "Dr. Hamilton did not note an abnormal gait on September 30, 2015. The focus [of] her examination was on the claimant's reported bilateral thumb

---

October examination. Id. at 1028. But the ALJ does cite the results of the July MRI. Id. at 1039.

[22] Id. at 1039.

[23] Id. at 29, 1039. The October treatment notes cited by the ALJ and other evidence in the record further suggest that the MRI showed no significant changes from 2010 results. Id. at 1028, 1039, 1199.

[24] Id. at 1033.

[25] Id.

pain."[26]  While the ALJ's treatment of this diagnosis is minimal,
there is little evidence of resulting limitations in the record,
and Marino did not emphasize such limitations before the ALJ.

Marino also underwent imagings of her lumbar spine.  A set
of x-rays in July 2015 found "mild discogenic disease . . . and
facet arthrosis."[27]  An MRI in April 2016 was performed at the
request of specialist Dr. Paul Wang, who found "mild discogenic
disease" and "mild endplate changes," but "no significant
spondylosis."[28]  The ALJ discussed the results of both tests,
noting also Dr. Wang's observation of normal gait, station,
strength, lower extremity tone and bulk, and leg raise testing.
He also highlighted that Dr. Wang found "that the April 2016 MRI
did 'not find a lesion amendable to surgery' and recommended
conservative management."[29]  The ALJ concluded that "[t]he
claimant's lumbar spine condition is mild.  The residual

---

[26] Id. at 29. While both the ALJ and Marino attribute this
examination to Dr. Hamilton, the record indicates it was Dr.
John Idoine. Id. at 1034, 1036.

[27] Id. at 1048. The Joint Statement of Material Facts refers to
this test as an MRI, but the record better supports the ALJ's
characterization of it as x-rays. Id. at 30.

[28] Id. at 1088.

[29] Id. at 30.

functional capacity set forth above includes consideration of the claimant's mild lumbar spine degenerative dis[c] disease."[30]

In May 2016, Marino underwent a cervical MRI ordered by another specialist, Dr. Copalan Umashankar. The ALJ acknowledged Dr. Umashankar's treatment notes indicating that Marino presented with mild foot drop and slightly reduced arm swing, but noted that these observations were not made elsewhere in the record. On the MRI itself, the ALJ explained that:

> The results included chronic proliferation changes resulting in multilevel foraminal narrowing, but with "no cord compression, cord signal abnormality or pathologic enhancement identified to correlate with the [claimant's] myelopathic symptoms." There [are] no prior complaints of neck pain within this record. The undersigned finds this new condition to be not severe.

Admin. R. at 30.

In addition to these procedures, Marino notes that she underwent a transesophageal echocardiogram and a cardiac stress test in 2016. But she does not provide any argument that the results of these exams, in combination with surrounding treatment notes, suggest a material change in her condition. She also points to various examinations with Dr. Hamilton in 2015 and 2016, but the related treatment notes do not clearly

---

[30] Id.

show reductions in Marino's capacity, and the ALJ could permissibly interpret them in light of the broader record.[31]

Finally, Marino argues that Dr. Fairley's opinion is deficient because it did not have the benefit of Dr. Hamilton's March 2016 letter and July 2016 report.  The ALJ separately discounted of both of those opinions and, as discussed supra Part III-A, permissibly excluded the July 2016 report.[32]

While Marino underwent numerous procedures after Dr. Fairley's January 2015 review, substantial evidence supports the ALJ's conclusion that the subsequent record does not show a functionally meaningful deterioration in her presentation.  And the ALJ did not improperly rely on raw medical data in reaching that conclusion, but instead focused on treatment notes interpreting raw diagnostic results and symptom comparisons across the record.  On substantial evidence review, there was adequate support in the record for the ALJ to find that Marino was not suffering material lasting effects from her total knee replacement, that the MRIs of her brain and spine did not show more than mild conditions, and that the diagnosis of mild first CMC osteoarthritis did not evidence a material change in limitations.  The ALJ's adoption of Dr. Fairley's opinion

---

[31] Admin. R. at 1018-23, 1028-32, 1099-1103.

[32] Admin. R. at 19-20, 30-31.

despite the subsequent record was adequately explained and does not require remand.

**C.  Consideration of impairments in RFC**

Finally, Marino argues that the ALJ erred in failing to consider her bilateral hand osteoarthritis and cervical spine impairments in formulating the RFC.  She notes that an ALJ must "consider all of [a claimant's] medically determinable impairments of which [he is] aware, including . . . medically determinable impairments that are not 'severe.'" 20 C.F.R. §§ 404.1545(a)(2).  The ALJ cited this regulation in his decision and stated that he "reviewed and considered all 'severe' and 'non-severe' impairments in formulating the following residual functional capacity below."[33]

Marino asserts that the ALJ erred by ignoring the fact that she was diagnosed with "bilateral first CMC osteoarthritis, mild."[34]  As discussed above, the ALJ's explicit discussion of this condition was limited to a characterization of the visit where it was diagnosed.  But this does show that the ALJ was aware of the thumb pain complaint.  Elsewhere, the ALJ made

---

[33] Admin. R. at 26.

[34] Id. at 1033.

18

"note that other diagnoses appear in the record" that Marino had not shown to be severe.[35]

Although the ALJ was obligated to consider even non-severe impairments in determining the RFC, the record shows that the ALJ was aware of Marino's thumb pain and did not ignore the diagnosis. An ALJ is "given considerable latitude in how he or she chooses" to consider non-severe impairments. Chabot v. U.S. Soc. Sec. Admin., Acting Comm'r, 2014 DNH 067, at 25 (Barbadoro, J.). And he "is not obliged to expressly address each of a claimant's diagnoses, but rather must consider the limiting effects of all the claimant's impairments." McDonough v. U.S. Soc. Sec. Admin., Acting Comm'r, 2014 DNH 142 at 30 (Barbadoro, J.) (internal quotation marks and citations omitted). The treatment plan notes accompanying the diagnosis suggest the need for activity modifications, but do not clearly outline limiting effects.[36] The ALJ explicitly considered Dr. Hamilton's March 2016 letter, which discussed Marino's arthritis.[37] Marino has not shown that the ALJ ignored evidence of limiting effects.

Marino also argues that the ALJ ignored evidence of her cervical spine impairment, pointing to the results of the

---

[35] Id. at 22.

[36] Admin. R. at 1033-34.

[37] Id. at 30-31, 917.

cervical MRI.  The ALJ directly discussed this procedure and its results, and determined in light of the record that Marino's neck pain was non-severe.[38]  The ALJ did not ignore this evidence.

## IV.  **Conclusion**

For these reasons, the Acting Commissioner's motion to affirm[39] is GRANTED and Marino's motion to reverse and remand the Acting Commissioner's decision[40] is DENIED.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated: September 19 2018

cc:  T. David Plourde, Esq.
     D. Lance Tillinghast, Esq.

---

[38] Id. at 30.

[39] Document no. 13.

[40] Document no. 11.